IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GRICE ENGINEERING, INC.,                                    OPINION AND ORDER

                            Plaintiff,
                                                                        09-cv-632-vis[1]
              v.

JG INNOVATIONS, INC. and
GORDON "JACK" GRICE,

                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff Grice Engineering, Inc. contends that defendants JG Innovations, Inc. and

Gordon "Jack" Grice are infringing plaintiff's trademark rights and United States Patent No.

5,526,617 (the '617 patent), engaging in false advertising and falsely designating the origin of

their goods and services in violation of 15 U.S.C. § 1125 and engaging in deceptive trade

practices in violation of Wis. Stat. § 101.18.  Jurisdiction is present.  28 U.S.C. § 1331.

        Now before the court is defendants' motion to stay the case pending a state court

decision or, in the alternative, to dismiss Jack Grice as a defendant and dismiss plaintiff's

_____

        [1]  The parties have declined jurisdiction of the magistrate judge in this case.  Because
no Article III judge has been assigned, I am assuming jurisdiction over this case to resolve
the parties' present disputes.

deceptive trade practices claim.  Defendants' motion to stay the case will be denied because it is not certain whether the state court action will resolve THE issues in this case and a stay would prejudice plaintiff.  With respect to defendants' motion to dismiss, I conclude that plaintiff has failed to state a claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18(1) and I will dismiss that claim.  However, I conclude that plaintiff has stated claims against defendant Grice personally for infringement of plaintiff's patent and trademark rights and violations of the Lanham Act, 15 U.S.C. § 1125.

In deciding the motion to dismiss, I have considered only the facts contained in plaintiff's complaint.  General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997).  However, in deciding defendant's motion to stay, I have considered the additional materials related to the ongoing state action that the parties provided in connection with the motion.

FACTS

A.  Allegations of Fact in Plaintiff's Complaint

Plaintiff Grice Engineering is a Delaware corporation with its principal place of business in Janesville, Wisconsin.  Plaintiff manufactures and installs pipe and mechanical concealment systems and is the world's largest manufacturer and supplier of the "soffi-steel system," a custom fabricated and fitted concealment system used to enclose fire sprinklers,

2

heating, ventilating and air-conditioning systems and utility lines.   Defendant JG Innovations is a Wisconsin corporation with its principal place of business in Janesville, Wisconsin.  Defendant Jack Grice is a citizen of Wisconsin.  He is the registered agent for JG Innovations and its sole shareholder.

Since as least 1994, the "Grice Engineering" trademark has been used in connection with the manufacture, sale and installation of pipe and mechanical concealment systems. Before 2007, Innovations Engineering, Inc., a company owned wholly by defendant Grice, manufactured and sold the soffi-steel system.  On approximately July 20, 2007, defendant Grice sold most of Innovations Engineering's assets to plaintiff for $3.15 million.  As part of the purchase agreement, plaintiff acquired the patent rights in the soffi-steel system and all rights, title and interest in the "Grice Engineering" trademark.  Also as part of the purchase agreement, plaintiff became the sole owner of the '617 patent, which covers an invention entitled "Tamperproof Conduit Concealing System."

The asset purchase agreement prohibited defendant Grice and Innovations Engineering from operating a business under any name including the term "Grice" or "Engineering" or any similar term.  Plaintiff has expended time and resources promoting the Grice Engineering mark throughout the United States.  It promotes and advertises its mark through the internet and print advertisements and trade shows.

From July 2007 to May 2009, plaintiff employed defendant Grice.  Defendant Grice

3

had access to confidential information regarding plaintiff's operations, finances and actual and potential customers.  On May 17, 2009, defendant Grice told plaintiff he was quitting. On approximately June 2, 2009, he founded a competing pipe concealment business under the name "Grice Innovations."  As part of its business operations, Grice Innovations established a website at http://griceinnovationsinc.com.  Through that website, defendants advertised Grice Innovations as providing "interior soffit solutions and custom engineered fabrications."  Shortly after Grice Innovations was founded, defendants began to solicit plaintiff's customers.  Among other things, they sent plaintiff's customers postcards that stated:

> Please be advised that our identity has changed.  Once known as the Grice Engineering team:  Jack Grice, Allen Stowers & Jasmin Stiether have formed the new business entity:  *"Grice Innovations, Inc."*

The postcards stated that customers should "update [their] record to reflect our revised contact information."  Plaintiff received several inquiries from its customers regarding defendants' postcards.

In a letter dated August 7, 2009, plaintiff requested that, among other things, defendants cease all uses of the Grice Innovations name and relinquish the domain name www.griceinnovations.com.  On approximately October 8, 2009, Grice Innovations filed an "amendment" with the Wisconsin Department of Financial Institutions and changed its name to "JG Innovations, Inc."  Despite the name change, defendants continue to use the

4

Grice Innovations name in connection with the sale of interior soffit systems and custom engineered fabrications. For example, defendants continue to use the Grice Innovation name with national and regional trade organizations, such as the "APPA" and the National Fire Sprinkler Association.

Defendants created a second website at http://www.jgius.com. Through that website, defendants advertise and sell interior soffit systems and custom engineered fabrications. The website has photographs purportedly depicting defendants' products. The photographs displayed on defendants' website actually depict plaintiff's products and installations, including work performed by plaintiff for the Denver Correctional Institution. The interior soffit systems that defendants manufacture and sell are covered by plaintiff's '617 patent.

## B. Additional Facts Relevant to Defendants' Motion to Stay

In 2007, when defendant Grice sold plaintiff Grice Engineering, Inc., the purchasers were Michael Liddel and Paul Johnson. They paid $500,000 to defendant Grice at closing, with the remaining $2.65 million financed by Grice by a promissory note. As collateral for the financing, Liddel and Johnson signed a $500,000 personal guarantee of the promissory note and pledged all of their shares in plaintiff Grice Engineering in the event of default on the promissory note.

Plaintiff failed to make certain payments on the promissory note and defendants

5

moved to enforce the stock pledges.  In response, plaintiff argued that defendants could not take any action to enforce Liddell's and Johnson's stock pledges because of a subordination agreement between defendants and Fifth Third Bank, subordinating plaintiff's debt to defendants to plaintiff's debt to Fifth Third.  Judge Welker of the Circuit Court for Rock County disagreed with plaintiff's argument, holding in an order dated October 26, 2009 that plaintiff had failed to make the payments required on the promissory note and was therefore in default.  Also, he held that subrogation of debt did not cover the stock pledges, and that even if it did, the use of such a subordination agreement to block all recovery by defendants and turn plaintiff's $2.65 million promissory note into an optional debt was unconscionable as a matter of law.  Plaintiff and Fifth Third Bank have filed an interlocutory appeal of Judge Welker's decision that is pending before the Wisconsin Court of Appeals.


OPINION

Plaintiff asserts five legal theories against defendants:  (1) patent infringement under 35 U.S.C. § 271; (2) common law trademark infringement; (3) false designation of origin under 15 U.S.C. § 1125; (4) false advertising under 15 U.S.C. § 1125; and (5) deceptive trade practices under Wis. Stat. § 101.18.  Defendants have moved to stay the entire case pending the outcome of the Rock County state court action and related appeal.  In the alternative, defendants have moved to dismiss all of plaintiff's claims against defendant Jack

6

Grice and plaintiff's deceptive trade practices claim against both defendants.

## A.  Motion to Stay

Defendants have moved for a stay pursuant to the court's inherent power to stay cases before it.  (Defendants make it clear that they are not asking the court to abstain under Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976).)  It is within the discretion of the court to stay proceedings pending the resolution of other suits. Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (citing Landis v. North American Co., 299 U.S. 248, 254-55 (1936)).  "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis, 299 U.S. at 254.

The court's power to stay cases before it is not boundless.  SanDisk Corp. v. Phison Electronics Corp., 538 F. Supp. 2d 1060, 1065 (W.D. Wis. 2008).  A stay that is so extensive as to be "immoderate" is an abuse of discretion. Cherokee Nation, 124 F.3d at 1416 (citing Landis, 299 U.S. at 257).  Moreover, when considering a request for a stay, courts should be mindful of the Supreme Court's admonition, stated repeatedly by the Court of Appeals for the Seventh Circuit, that federal courts have a "virtually unflagging obligation" absent "exceptional circumstances" to exercise jurisdiction when a case is

7

properly before it.  <u>Colorado River</u>, 424 U.S. at 817; <u>R.R. Street & Co., Inc. v. Vulcan</u> <u>Materials Co.</u>, 569 F.3d 711, 715 (7th Cir. 2009).  Thus, the general test for imposing a stay requires the court to "balance interests favoring a stay against interests frustrated by the action" in light of the court's strict duty to exercise jurisdiction in a timely manner. <u>Cherokee Nation</u>, 124 F.3d at 1416 (citing <u>Landis</u>, 299 U.S. at 255).  Courts often consider the following factors when deciding whether to stay an action:  (1) whether the litigation is at an early stage, <u>Seaquist Closures LLC v. Rexam Plastics</u>, 2008 WL 4691792, at *1 (E.D. Wis. Oct. 22, 2008); (2) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (3) whether a stay will simplify the issues in question and streamline the trial; and (4) whether a stay will reduce the burden of litigation on the parties and on the court.  <u>Tap Pharmaceautical Products, Inc. v. Atrix Laboratories, Inc.</u>, 2004 WL 422697, at *1 (N.D. Ill. Mar. 3, 2004); <u>Baxter International, Inc., v. Fresenius Medical Care Holdings, Inc</u>, 2008 WL 4395854, at *3 (N.D. Ill. Sept. 25, 2008).

With these principles in mind, I conclude that defendants have not shown that the circumstances of this case are exceptional enough to justify a stay.  <u>Nken v. Holder</u>, 129 S. Ct. 1749, 1761 (2009) ("The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion").  Defendants contend that a stay would simplify issues for trial because the state action "may resolve the issues of this case."  If the court of appeals affirms Judge Welker's decision to grant defendants control of Johnson and

8

Liddell's shares in Grice Engineering, defendants say that they will most likely dismiss the case voluntarily or the case will be dismissed as moot on the ground that the parties would no longer be adverse. Also, defendants argue that a stay would reduce the burden of litigation on the parties. In particular, defendants contend that because they may eventually own stock in plaintiff Grice Engineering, they will end up paying the costs of litigation for both sides of this case. Thus, defendants argue, they have an interest in keeping litigation costs down, while the current owners of Grice Engineering have nothing to lose by driving up litigation costs. In addition, the possibility of owning stock in plaintiff and controlling the trademark and patent at issue hinders defendants' defense in this case because they will be reluctant to challenge the validity of a trademark or patent that they may control in the future. Finally, defendants argue that a stay will not unduly harm plaintiff because it will only slow down plaintiff's collection of money damages, if any. In sum, defendants say, the relevant factors favor a stay, especially when the case is still in its early stages.

However, defendants have cited no cases in which a court granted a stay under circumstances similar to those in this case. Defendants cite only Landis, 299 U.S. 249, Ingersoll Milling Machine Co. v. Granger, 833 F.2d 680 (7th Cir. 1987) and SanDisk Corp., 538 F. Supp. 2d 1060. Each of these cases is distinguishable from the present case because it involved pending proceedings that were either parallel or directly related to the issue in dispute. Landis, 299 U.S. at 256 (holding it proper for district court to stay proceedings in

favor of "test suit" in another court considering the same complex, novel and publicly significant issues); <u>Ingersoll</u>, 833 F.2d at 685-86 (upholding district court's decision to stay proceedings pending outcome of Belgian proceedings on same issue); <u>SanDisk Corp.</u>, 538 F. Supp 2d at 1066-67 (staying complex patent case in favor of International Trade Commission proceedings involving overlapping discovery and factual and legal disputes).

Unlike <u>Landis</u>, <u>Ingersoll</u> and <u>SanDisk</u>, this case involves proceedings pending in the alternative state forum that do not involve the same legal or factual issues.  The state court is not considering plaintiff's trademark or patent rights or whether defendants have engaged in deceptive trade practices or unfair competition.  Although a court has the discretion to stay proceedings in favor of proceedings in another forum where the parties and issues are not identical, <u>Landis</u>, 299 U.S. at 254, I am not persuaded that a stay would be appropriate under the circumstances in this case.  I agree with plaintiff that it is far from clear whether the state court decision will resolve or simplify the issues of this case.  Defendants contend only that they may own Liddel's and Johnson's shares in plaintiff Grice Engineering, but defendants do not explain how much stock this is or whether there are other shareholders with voting power that may affect the present action.  In fact, defendants' assertion that the present case will be dismissed is only speculative.  Defendants state that, "[e]ven if Innovations *does not voluntarily dismiss* this case once it has the right to vote [plaintiff's] stock, the parties would no longer be adverse and the case would *likely* be dismissed as moot."

10

(Emphasis added).  Such a statement is simply too speculative to support a stay.  Also, plaintiff would be prejudiced by a stay because it is uncertain when the appeal will be resolved.  In the interim, plaintiff would not be able to prosecute this case and it would be deprived of the ability to obtain a judgment and injunctive relief while the stay is pending.  This might allow defendants the opportunity to exploit and violate plaintiff's intellectual property rights.

Because it is not certain whether the state court action will simplify or resolve the issues of this case so as to substantially advance judicial economy and because granting a stay would prejudice plaintiff, I will deny defendants' motion to stay.

B.  Motion to Dismiss

Defendants contend that plaintiff's claim under Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, should be dismissed against both defendants because plaintiff has failed to state a claim under the Act and has failed to plead the claim with particularity.  Also, defendants contend, plaintiff's five claims against defendant Grice in his personal capacity should be dismissed.

A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) when the allegations in a complaint, however true, could not raise a clam of entitlement to relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  In deciding whether dismissal is warranted, the

11

court will construe all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor.  <u>Savory v. Lyons</u>, 469 F.3d 667, 670 (7th Cir. 2006).

1.  <u>Deceptive trade practices</u>

Wisconsin courts divide a claim under Wis. Stat. § 100.18(1) into three elements: (1) the defendant made a representation to "the public" with the intent to induce an obligation: (2) the representation was "untrue, deceptive or misleading": and (3) the representation materially caused a pecuniary loss to the plaintiff.  <u>Novell v. Migliaccio</u>, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553.  Plaintiff contends that it has satisfied these elements for pleading purposes by alleging that defendants Grice and JG Innovations "made a series of false, deceptive and misleading statements to consumers" about the source, quality and affiliation of defendants' products and that defendants' misrepresentations have caused irreparable harm to plaintiff.  Defendants contend that this claim should be dismissed because plaintiff has not pleaded the claim with particularity, as required under Fed. R. Civ. P. 9(b), and because the Act does not provide a cause of action for one vendor against a competitor for representations the competitor made to third parties.

Plaintiff's allegations involve misrepresentations that defendants made to third parties.  Plaintiff does *not* allege that defendants made any misrepresentations to *plaintiff*.  Under the common law of fraud, this omission would undoubtedly be fatal to its claim.

12

Kaloti Enterprises, Inc. v. Kellogg Sales Co., 2005 WI 111, ¶ 12, 283 Wis. 2d 555, 569, 699 N.W.2d 205, 211 (element of claim for intentional misrepresentation is that "the plaintiff believed the statement to be true and relied on it to his/her detriment"). The elements of a claim under Wis. Stat. § 100.18, as stated by the Wisconsin Supreme Court, are not so straightforward. They do not explicitly require a misrepresentation to the plaintiff, only to "the public." Further, the supreme court has recognized that the elements of a common law fraud claim and a claim under § 100.18 are not identical. K & S Tool & Die Corp. v. Perfection Machinery Sales, Inc., 2007 WI 70, ¶ 19, 301 Wis. 2d 109, 122, 732 N.W.2d 792, 799.

The supreme court has not addressed the question whether a plaintiff can state a claim under Wis. Stat. § 100.18 for misrepresentations made to a third party. Plaintiff argues that the court of appeals has recognized the viability of such claims. In particular, plaintiff points to the court of appeals' decision in Tim Torres Enterprises, Inc. v. Linscott, 142 Wis. 2d 56, 416 N.W.2d 670 (Ct. App. 1987), a case in which the plaintiff sued a competing frozen custard business under Wis. Stat. § 100.18. Id. at 63. The plaintiff alleged that the defendant engaged in deceptive trade practices by representing in signs and fliers that his establishment was the only place a certain type of frozen custard was available. Id. at 63, 68-69. A jury returned a verdict in the plaintiff's favor, awarding $18,000 in lost sales. Id. at 64. The issue on appeal was whether the evidence was sufficient to support

13

findings that the defendant had made untruthful statements contrary to § 100.18 and whether the plaintiff suffered any loss as a result of the statements. Id. at 59-60.  The court held that the plaintiff presented sufficient evidence of "actual consumer reliance" and lost sales to sustain the jury's verdict. Id. at 72.  However, the court of appeals did not have occasion to consider whether § 100.18 supports a cause of action by a plaintiff who was not the recipient of the misrepresentations because the parties never raised the issue.  In these circumstances, the court of appeals' affirmance of the jury verdict is not the same as holding that § 100.18 creates a cause of action for misrepresentations made to non-parties.  Plaintiff has pointed to no other cases that support a conclusion that § 100.18 supports claims for misrepresentations to non-parties.

Recently, Magistrate Judge Crocker held that § 100.18 does not extend to misrepresentations made to non-parties. Spacesaver Corp. v. Marvel Group, Inc., 621 F. Supp. 2d 659, 663-64 (W.D. Wis. 2009) ("[I]f § 100.18 extends to misrepresentations made to nonparties, application of the statute becomes almost nonsensical.")  Judge Crocker cited the Wisconsin Supreme Court's decision in Novell, 2008 WI 44, in which the supreme court noted that "[r]eliance is an aspect of the third element [of a claim under § 100.18], whether a representation caused the plaintiff's pecuniary loss." Id. at ¶ 44.  Judge Crocker read this to mean that satisfying the element of causation for a claim under § 100.18 requires more than a showing by the plaintiff that it sustained a loss that is somehow

14

connected to a misrepresentation made to "the public."  Rather, as the court stated in Novell, the question is whether "the representation . . . *materially induce[d] the plaintiff's decision to act* and [whether the] plaintiff would have acted in the absence of the representation." Id. at ¶ 51 (emphasis added).  I am persuaded by this reasoning, which is supported by the purpose of § 100.18, which is specifically "to protect the residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product" to a consumer.  K & S Tool & Die Corp., 2006 WI App 148, ¶ 26; see also State v. Automatic Merchandisers of America, Inc., 64 Wis. 2d 659, 663, 221 N.W.2d 683, 686 (1974)); Peterson v. Cornerstone Property Development, 2006 WI App 132, ¶ 26, 294 Wis. 2d 800, 815, 720 N.W.2d 716, 723.  The statute is not designed to protect product manufacturers from the deceptive acts of their competitors.  Wisconsin law contains other doctrines, such as tortious interference with contract, Shank v. William R. Hague, Inc., 192 F.3d 675, 689 (7th Cir. 1999) (applying Wisconsin law), that are designed specifically to protect one vendor from the unlawful actions of a competitor.

In this case, plaintiff does not allege that it was "induced" to do anything by defendant; it alleges that "customers" were induced to "alter[] their purchase decisions" by defendant's misrepresentations.   Thus, even if I assume that defendants' alleged misrepresentations "caused" plaintiff to lose sales (because customers would have purchased interior soffit products from plaintiff in the absence of the misrepresentations), that is not

15

the type of causation contemplated by the statute.  Therefore, I conclude that plaintiff's deceptive trade practices' claim must be dismissed.

2.  Plaintiff's claims against defendant Grice

Because I am dismissing plaintiff's claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 101.18, plaintiff is left with four legal theories against defendants Grice and JG Innovations:  (1) patent infringement under 35 U.S.C. § 271, either by direct infringement or inducement; (2) common law trademark infringement; (3) false designation of origin under 15 U.S.C. § 1125; and (4) false advertising under 15 U.S.C. § 1125.

Defendants contend that all of plaintiff's claims against defendant Grice personally should be dismissed because plaintiff's allegations relate only to conduct by defendant JG Innovations and by Grice in his role as an employee of JG Innovations.  Defendants contend that plaintiff has not pleaded any facts sufficient to pierce the corporate veil under Wisconsin law.  (Defendants do not challenge plaintiff's claims against defendant JG Innovations).

Defendants are correct that corporate officers can be held personally liable for infringement or other tortious acts of their corporation if there is reason to disregard the corporate form, such as evidence that the corporation was merely the alter ego of its officers. Manville Sales Corp. v. Paramount Systems, Inc., 917 F.2d 544, 552 (Fed. Cir. 1993); see

16

also <u>Rex Chainbelt, Inc. v. General Kinematics Corp.</u>, 363 F.2d 336, 348 (7th Cir. 1966)

(holding president of corporation personally liable for patent infringement under alter ego

theory).  However, in plaintiff's response to defendants' motion to dismiss, plaintiff does not

argue that it is attempting to pierce the corporate veil because piercing the corporate veil is

not the only means of holding a corporate officer liable for infringement or other tortious

acts.  Under both Wisconsin and Seventh Circuit law, corporate officers may be individually

liable to third parties for participating in or assenting to torts committed by them or their

corporation.  <u>Casper v. American International South Insurance Co.</u>, 2010 WI App 2, ¶ 71,

--- N.W.2d ----, 2009 WL 4984797, *16 (citing <u>Oxmans' Erwin Meat Co. v. Blacketer</u>, 86

Wis. 2d 683, 692, 273 N.W.2d 285, 289 (1979) ("An individual is personally responsible

for his own tortious conduct.  A corporate agent cannot shield himself from personal liability

for a tort he personally commits or participates in by hiding behind the corporate entity"));

<u>Browning-Ferris Industries of Illinois, Inc. v. Ter Maat</u>, 195 F.3d 953, 955 (7th Cir. 1999)

(holding that shareholders and officers are not shielded from liability for their own acts).

Thus, under general tort liability principals, it appears that plaintiff may state claims against

defendant Grice for tortious acts in which he participated personally.

      However, although patent and trademark infringement are torts, <u>Honeywell, Inc. v.</u>

<u>Metz Apparatewerke</u>, 509 F.2d 1137, 1141 (7th Cir. 1975), the Court of Appeals for the

Seventh Circuit has applied a stricter standard for holding a corporate officer liable for direct

infringement.  In Dangler v. Imperial Machine Co., 11 F.2d 945, 947 (7th Cir. 1926), the

court of appeals held that corporate officials are not liable for direct infringement unless the

corporate officer exceeds his duties and willfully and knowingly participates directly in the

infringing activity.  Under the standard set forth in Dangler:

> [I]n the absence of some special showing, the managing officers of a
> corporation are not liable for the infringements of such corporation, though
> committed under their general direction. . . . It is when the officer acts
> willfully and knowingly—that is, when he personally participates in the
> manufacture or sale of the infringing article (acts other than as an officer), or
> when he uses the corporation as an instrument to carry out his own willful and
> deliberate infringements, or when he knowingly uses an irresponsible
> corporation with the purpose of avoiding personal liability—that officers are
> held jointly with the company.

Dangler, 11 F.2d at 947.

Despite the passage of years, Dangler is still the law of the Seventh Circuit for direct

patent and trademark infringement claims and has been cited approvingly by subsequent

courts.  E.g.,General Motors Corp. v. Provus, 100 F.2d 562, 564 (7th Cir. 1938) (holding

officers personally liable for infringement under Dangler standard); Weller Manufacturing

Co. v. Wen Products, Inc., 231 F.2d 795, 801 (7th Cir. 1956) (same); Panther Pumps &

Equipment Co. Inc. v. Hydrocraft, Inc., 468 F.2d 225, 233 (7th Cir. 1972) (officers not

personally liable for infringement under Dangler standard); White v. Marshall, 2009 WL

5205441, *10 (E.D. Wis. Dec. 23, 2009) ("Dangler is still the law of this circuit"); For Your

Ease Only, Inc. v. Calgon Carbon Corp., 2003 WL 21475905, *2-3 (N.D. Ill. June 20, 2003)

(plaintiff stated infringement claim against corporate officer under <u>Dangler</u> standard); <u>Syscon, Inc. v. Vehicle Valuation Services, Inc.</u>, 274 F. Supp. 2d 975, 977 (N.D. Ill. 2003) (same); <u>Drink Group, Inc. v. Gulfstream Communications, Inc.</u>, 7 F. Supp. 2d 1009, 1010 (N.D. Ill. 1998) (corporate officers not personally liable for infringement under <u>Dangler</u> standard); <u>Peaceable Planet, Inc. v. Ty, Inc.</u>, 185 F. Supp. 2d 893, 896 (N.D. Ill. 2002) (collecting patent and trademark cases that apply <u>Dangler</u> standard). The <u>Dangler</u> standard is also in accord with the most recent decisions of the United States Court of Appeals for the Federal Circuit. <u>E.g.</u>, <u>Hoover Group, Inc. v. Custom Metalcraft, Inc.</u>, 84 F.3d 1408, 1411 (Fed. Cir. 1996).

When applying <u>Dangler</u> at the motion to dismiss stage, courts consider whether the plaintiff has pleaded sufficient facts regarding the corporate officer's personal participation in the allegedly infringing activities. Courts deny an officer's motion to dismiss when the plaintiff has alleged that the officer had an active, hands-on role in the corporation's operations and alleged infringement. <u>E.g.</u>, <u>C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.</u>, 626 F. Supp. 2d 837, 857-58 (N.D. Ill. 2009) (holding that plaintiff's complaint contained sufficient allegations of corporate officer's personal involvement to state a claim under <u>Dangler</u> standard where plaintiff alleged that defendant authorized infringement, profited from infringement and offered the infringing product for sale); <u>Nordstrom Consulting, Inc. v. M & S Technologies, Inc.</u>, 2006 WL 2931677, *2 (N.D. Ill. Oct. 12,

2006) (individual defendant allegedly took active role in infringing activities); <u>Syscon, Inc.</u>, 274 F. Supp. 2d at 977 (president personally authorized and contributed to infringing activity and promotion of product); <u>For Your Ease Only, Inc.</u>, 2003 WL 21475905, *3 (president allegedly "personally imported, manufactured, and offered the allegedly infringing product for sale" as well as personally appeared on television to promote the product); <u>Peaceable Planet, Inc.</u>, 185 F. Supp. 2d at 896-97 (president founded corporation and allegedly authorized and approved infringing design in addition to promoting and offering for sale).

In this case, general tort principles are easily satisfied by plaintiff's allegations against defendant Grice that are related to plaintiff's claims of direct infringement under 35 U.S.C. § 271(a), common law trademark infringement, false designation of origin and false advertising because plaintiff's complaint contains allegations of Grice's personal involvement in the alleged tortious acts.  Moreover, plaintiff has pleaded sufficient facts to meet the "special showing" requirement under the stricter standard set forth in <u>Dangler</u>.  Plaintiff alleges that Grice founded, owns and operates JG Innovations, a company that competes directly with plaintiff, infringes plaintiff's patent and uses the "Grice Engineering" mark in its marketing.  Plaintiff alleges that its "Grice Engineering" mark enjoys considerable goodwill and widespread recognition as a supplier of interior soffit systems and that Grice is aware of plaintiff's trademark and patent rights.  Plaintiff alleges that defendants Grice

and JG Innovations willfully and deliberately manufacture, use, market and sell the allegedly infringing products and that defendants Grice and JG Innovations have delivered infringing products to customers.  Also, plaintiff alleges that defendants Grice and JG Innovations have contacted plaintiff's customers through postcards stating that JG Innovations has a "new identity," have created a website to advertise and sell JG Innovations' allegedly infringing products and that the website actually depicts plaintiff's products.  Plaintiff's claims against Grice do not rest solely on the fact that Grice is a corporate officer.  Instead, the complaint makes it clear that defendant Grice participates personally and actively in these allegedly infringing activities and, as the owner of JG Innovations, stands to benefit from the decision to manufacture the allegedly infringing products.  These allegations permit an inference that Grice participated willfully and directly in infringement of plaintiff's patent and trademark rights and in false advertising and false designation of the origins of JG Innovations' products.  Therefore, I conclude that plaintiff has stated claims against defendant Grice for direct patent and trademark infringement and violations of the Lanham Act.

Determining whether plaintiff has stated a claim against defendant Grice for inducement of infringement under 35 U.S.C. § 271(b) requires a slightly different analysis. Under § 271(b), any person who "actively induces infringement of a patent shall be liable as an infringer," and this should apply to any person regardless of their status as a corporate officer.  Although the Court of Appeals for the Seventh Circuit has not had opportunity to

apply § 271(b) to a corporate officer, under Federal Circuit law, "it is well settled that corporate officers who actively aid and abet their corporations' infringement may be personally liable for inducing infringement under § 271(b) regardless of whether the corporation is the alter ego of the corporate officer." Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579-80 (Fed. Cir. 1986); see also Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1575 (Fed. Cir. 1996) (persons in authority and control may be liable under § 271(b) for inducing infringement of his corporation); Water Technologies, Corp. v. Calco, Ltd., 850 F.2d 660, 668-69 (Fed. Cir. 1988) (same); Power Lift, Inc. v. Lang Tools, Inc., 774 F.2d 478, 481 (Fed. Cir. 1985) (corporate officials personally liable under § 271(b) if they "actively aid and abet their corporation's infringements").  However, as with claims for direct infringement, some courts have required a special showing for inducement claims. C.f. Insituform Technologies, Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1378 (Fed. Cir. 2004) (explaining lack of clarity of standard to be applied in inducement cases).  The stricter standard is set forth in Manville Sales Corp., 917 F.2d at 553, and requires a plaintiff to allege that the defendant *knowingly induced* infringement of the plaintiff's patent.   In particular,

> It must be established that the defendant possessed specific intent to encourage another's infringement and not merely that the defendant had knowledge of the acts alleged to constitute inducement.  The plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual

infringements.

Id.

Defendants contend that plaintiff fails to state a claim for inducing infringement against defendant Grice because plaintiff does not allege that Grice "possessed specific intent to encourage" JG Innovations' alleged infringement.  However, as discussed above, plaintiff alleges that Grice founded, owns and operates JG Innovations and that he is aware of plaintiff's patent rights.  Also, plaintiff alleges that defendant Grice participated in marketing the allegedly infringing products and acted willfully to infringe plaintiff's patent.  Assuming all well-pleaded facts to be true and drawing all inferences in favor of plaintiff, I conclude that such allegations permit an inference that Grice "possessed specific intent" to encourage infringement and actively aided and abetted JG Innovations' alleged infringement.  Therefore, I conclude that even under the strict standard of Manville, plaintiff has stated a claim against defendant Grice for inducement of infringement under 35 U.S.C. § 271(b).


ORDER

IT IS ORDERED that the motion to stay or dismiss, dkt. #11, filed by defendants JG Innovations, Inc. and Gordon "Jack" Grice is GRANTED IN PART and DENIED IN PART.  Defendant's motion is GRANTED with respect to plaintiff Grice Engineering Corporation's claim under the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 101.18

23

and this claim is DISMISSED.  Defendant's motion is DENIED in all other respects.

Entered this 4th day of March, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

24